FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 22, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JODENE P.,[1] | No. 2:20-cv-00260-MKD |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

ORDER - 5

education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On September 12, 2016, Plaintiff applied both for Title II disability

insurance benefits and Title XVI supplemental security income benefits alleging an

amended disability onset date of March 31, 2013.[2]  Tr. 17, 56-57, 211-25.  The

_____

[2] Plaintiff previously applied for disability insurance benefits on January 7, 2007;

the application was denied initially and on reconsideration.  Tr. 70.  Plaintiff's

ORDER - 6

applications were denied initially and on reconsideration. Tr. 118-24. Plaintiff appeared before an administrative law judge (ALJ) on July 5, 2019. Tr. 33-52. On July 30, 2019, the ALJ issued a partially favorable decision. Tr. 13-32.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through March 31, 2013, has not engaged in substantial gainful activity since March 31, 2013. Tr. 19. At step two, the ALJ found that Plaintiff has the following severe impairments: osteoarthrosis, episodic vomiting syndrome, facial injury/numbness, asthma/emphysema, depressive disorder, and anxiety disorder. *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 20. The ALJ then concluded that Plaintiff has the RFC to perform sedentary work with the following limitations:

> [Plaintiff] can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs; she can occasionally stoop, crouch, kneel, and crawl; she is limited to no exposure to irritants such as fumes, odors, dusts, and gases; she is limited to no exposure to poorly ventilated areas; she is able to remember, understand, and carry out simple and routine instructions and tasks consistent with SVP levels 1 and 2 type jobs but no strict production quotas, emphasis on

_____

request for a hearing resulted in an August 21, 2009 Order of Dismissal when Plaintiff withdrew her request for hearing. Tr. 55.

ORDER - 7

shift rather than hourly; and she is limited to occasional interaction with the general public, coworkers, and supervisors.

Tr. 21.

At step four, the ALJ found Plaintiff is unable to perform any of her past relevant work. Tr. 25. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform prior to the established onset date, including final assembler, addresser, and table worker. Tr. 26. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of March 31, 2013, through July 28, 2018, but Plaintiff became disabled on July 29, 2018, when she changed age categories. Tr. 27. As such, Plaintiff was not under a disability within the meaning of the Social Security Act at any time prior to her March 31, 2013 date last insured and she thus did not qualify for disability insurance benefits, but she established disability for her supplemental security income application as of July 29, 2018. *Id.*

On May 29, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and denying her supplemental security income benefits under Title XVI of the Social Security Act prior to the established onset date.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2.  Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 14 at 1-2.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims.  ECF No. 14 at 3-10.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 24.

### 1. Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's symptom claims were inconsistent with the objective medical evidence. Tr. 22-24. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's

pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Here, the ALJ found that Plaintiff's reported symptoms related to her physical impairments were not as severe as she claimed.  Tr. 22-23.  First, Plaintiff reported ongoing cyclical vomiting symptoms, but the ALJ noted Plaintiff's gastrointestinal workup was unremarkable, and Plaintiff's hematemesis was noted as likely related to erosions or a Mallory-Weiss tear, which had healed.  Tr. 22 (citing Tr. 368-406, 565).  Plaintiff's episodic vomiting was noted as mostly stable on her medication regimen.  Tr. 23 (citing Tr. 1290).  Plaintiff argues her vomiting is caused by a neurological condition and thus a normal gastrointestinal workup is not inconsistent with her allegations.  ECF No. 14 at 5-7 (citing Tr. 368, 372-73).  The neurologist suggested an MRI of Plaintiff's brain, which was unremarkable.  Tr. 391.  Several records indicate Plaintiff's vomiting was managed and controlled my medication, Tr. 430, 458, 466, and only on "rare" occasions Plaintiff needed IV fluids or medication, Tr. 458.  On one occasion, Plaintiff reported she was able to resolve a vomiting episode herself.  Tr. 22, 1303.  While Plaintiff reports vomiting episodes as frequently as every two to six weeks, ECF No. 14 at 4, the medical records indicate she had multiple periods where she went three, five, and six months between episodes.  Tr. 466, 470, 505.

ORDER - 12

The ALJ also noted inconsistencies between the objective medical evidence and Plaintiff's symptom complaints related to her other physical symptoms. Tr. 23. While Plaintiff alleged limitations in her ability to use her hands, the ALJ noted imaging showed only slight sclerosis and minimal joint narrowing at the second CMC joint level of both wrists, which was noted as possible early osteoarthritis, and the x-ray of Plaintiff's left wrist was negative. *Id.* (citing Tr. 413, 541). Regarding her bouts of pneumonia and impaired breathing, a pulmonary fitness test showed moderate obstructive defect. Tr. 23 (citing Tr. 1356). Despite complaints of difficulty walking and lifting, Tr. 21, Plaintiff generally had intact strength in both the upper and lower extremities, and she had a normal gait and intact neurological findings, Tr. 23 (citing, e.g., Tr. 333, 494, 1207).

Next, the ALJ found Plaintiff's reported symptoms related to her mental health impairments were not as severe as she claimed. Tr. 23-24. While Plaintiff alleged limitations due to anxiety and depression, Plaintiff has never sought mental health treatment. Tr. 23. Plaintiff's cognitive functioning has generally been normal during medical visits. *Id.* (citing, e.g., Tr. 443, 460, 463, 466). At a psychological consultative examination, Plaintiff had an abnormal affect, and got the date wrong, but was otherwise oriented, and was able to perform serial calculations correctly although slowly, she was able to follow a three-step

command and spell "world" forward and backward, and she was able to perform digit spans forward and backward, as well as recall two of three items after a delay. Tr. 24, 1111-13. On this record, the ALJ reasonably concluded that Plaintiff's symptom claims were inconsistent with the objective evidence. This finding is supported by substantial evidence and was a clear and convincing reason, along with the other reasons offered, to discount Plaintiff's symptom complaints.

### 2. Work During Relevant Period

The ALJ found Plaintiff's work as a horse trainer was inconsistent with her symptom claims. Tr. 23. Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (seeking work despite impairment supports inference that impairment is not disabling). The ALJ noted that medical records indicated Plaintiff worked as a horse trainer during the relevant time period. Tr. 23 (citing Tr. 332, 1160). A June 2013 record note Plaintiff "works as a horse trainer." Tr. 332. A December 2016 record notes, "[s]he does work in a very dusty environment with horses." Tr. 1160.

There are multiple references to Plaintiff working, and her interactions with horses throughout the record. In 2010, which is after Plaintiff's original alleged onset date but before her amended alleged onset date, Plaintiff reported an injury

ORDER - 14

from "horse roping." Tr. 522. Plaintiff reported performing horse care from January 2012 through March 2013, and working as a farm manager from December 2013 through December 2014. Tr. 267. In December 2013, Plaintiff reported she was working training horses. Tr. 493. In October 2014, Plaintiff reported her job required her to lift 120-pound bales of hay and engage in other strenuous activities, and she reported her daily activities at work aggravated her pain symptoms. Tr. 473, 480. Plaintiff reported an injury to her left hand while riding a horse in May 2015, and reported the injury occurred at work. Tr. 407. Plaintiff reported being kicked by a horse in October 2015. Tr. 22, 419. An October 2015 medical record also notes Plaintiff rides horses. Tr. 430. In 2017, Plaintiff reported her last job was one year prior as a janitor for one month. Tr. 1110. In October 2018, Plaintiff reported she had stopped working since her last appointment; her last appointment was one month prior. Tr. 1303-04. In 2019, Plaintiff reported she was no longer able to ride horses due to her pain which had been worsening over the last six months, and reported she was previously able to ride horses. Tr. 1231.

Plaintiff argues that the records cited by the ALJ are unclear, as the records may have been indicating Plaintiff previously worked as a horse trainer but was not presently working, and argues the ALJ failed to specify how often Plaintiff worked or how her symptoms impacted her work. ECF No. 14 at 8-9. However, there is

substantial evidence to support the ALJ's finding that Plaintiff worked as a horse

trainer during the relevant period, discussed *supra*, and there is additional evidence

of Plaintiff working on multiple occasions during the relevant period. While the

ALJ did not make a finding as to the length of time, or frequency of the work,

Plaintiff's ability to work, and repeatedly engage in physical tasks, including lifting

up to 120 pounds and riding horses, is inconsistent with Plaintiff's symptom

claims. This was a clear and convincing reason to reject Plaintiff's symptom

claims.

### 3. *Improvement with Treatment*

The ALJ found Plaintiff's improvement with treatment was inconsistent with

her symptom claims. Tr. 22-23. The effectiveness of treatment is a relevant factor

in determining the severity of a claimant's symptoms. 20 C.F.R. §§

404.1529(c)(3), 416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d

1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir.

2008) (a favorable response to treatment can undermine a claimant's complaints of

debilitating pain or other severe limitations).

The ALJ noted Plaintiff's cyclical vomiting improved with medication. Tr.

22-23. Several records indicate Plaintiff's vomiting was managed and controlled

by medication. Tr. 430, 458, 496. In 2013, Plaintiff reported her symptoms had

been better controlled with medication, Tr. 496, and she reported she had reduced

vomiting episodes to once every three months with medication, but she went off the medication for a period of time, Tr. 503, 505. In January 2015, Plaintiff reported she only had a vomiting episode once in six months. Tr. 470. In June 2015, Plaintiff reported not having a vomiting episode in over five months. Tr. 466. In 2016, Plaintiff reported her medications work well, Tr. 449, and though she had recurrences requiring IV fluids, Tr. 452, these occurrences were noted as "rare," Tr. 458. In 2018, Plaintiff reported she had been able to resolve a recent episode herself. Tr. 22, 1303). While Plaintiff argues she had ongoing symptoms despite some improvement, ECF No. 14 at 7-8, the ALJ reasonably concluded that Plaintiff's symptoms, when treated, were not as limiting as Plaintiff claimed. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints. Plaintiff is not entitled to remand on these grounds.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinion of Andrew Schock, PA-C. ECF No. 14 at 10-12. "Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763

F.3d at 1161 (alteration in original); *see* 20 C.F.R. §§ 404.1513, 416.913 (2013).[3]

However, an ALJ is required to consider evidence from non-acceptable medical

sources, such as therapists. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).[4] An

ALJ may reject the opinion of a non-acceptable medical source by giving reasons

germane to the opinion. *Ghanim*, 763 F.3d at 1161.

On April 20, 2017, Mr. Schock, a treating physician's assistant, opined

Plaintiff's cyclical vomiting condition is well-documented and "has validity" and

Plaintiff could be able to "make her case for disability due to the severity of the

condition." Tr. 1146. On April 26, 2017, Mr. Schock completed a questionnaire

regarding Plaintiff's functioning. Tr. 1167-68. Mr. Schock stated Plaintiff has

been diagnosed with cyclical vomiting syndrome. Tr. 1167. He opined Plaintiff

needs to lie down during the day, working on a regular basis would cause

---

[3] The regulation that defines acceptable medical sources is found at 20 C.F.R. §§

404.1502, 416.902 for claims filed after March 27, 2017. The Court applies the

regulation in effect at the time the claim was filed.

[4] The regulation that requires an ALJ's consider opinions from non-acceptable

medical sources is found at 20 C.F.R. §§ 404.1502c, 416.920c for claims filed after

March 27, 2017. The Court applies the regulation in effect at the time the claim

was filed.

ORDER - 18

Plaintiff's condition to deteriorate, Plaintiff would miss four or more days per month if she worked full-time, and her limitations had lasted for three to five years. Tr. 1167-68. The ALJ gave Mr. Schock's opinion little weight. Tr. 24.

First, the ALJ found Mr. Schock did not cite to any objective evidence in support of his opinions. *Id.* The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 at 1228. Mr. Schock described Plaintiff's symptoms, but did not give any explanation for why Plaintiff needs to lie down, nor why her condition would deteriorate if she worked. Tr. 1167. Mr. Schock also did not cite to any objective evidence; when asked to detail Plaintiff's relevant clinical findings and test results, Mr. Schock wrote "nondiagnostic, [rule out] other causes." *Id.*

Plaintiff argues Mr. Schock's opinion is supported by his treatment records. ECF No. 14 at 11. An ALJ may not reject an opinion because it is in the form of a check-box questionnaire if the opinion is supported by treatment notes. *See Esparza v. Colvin*, 631 Fed.Appx 460 (9th Cir. 2015); *see also Garrison*, 759 F.3d at 1014 n. 17. Plaintiff argues the records reflect her frequent vomiting episodes. ECF No. 14 at 11. However, as discussed *supra,* the medical records indicate

Plaintiff's episodes became less frequent with treatment, and began happening as infrequently as every six months. Tr. 642. Mr. Schock's records demonstrate Plaintiff had periods of more severe symptoms, such as a hospital admission for dehydration after a vomiting episode in 2013, and emergency room visits for IV fluids. Tr. 592, 670. Mr. Schock's records also discuss Plaintiff's symptom improvement, and noted Ativan controlled Plaintiff's vomiting symptoms in 2015, Tr. 630, 638, 642, and amitriptyline significantly reduced the vomiting episodes in 2016, Tr. 592. As Mr. Schock did not cite to evidence to support his opinion, and the treatment records are not consistent with a disabling opinion, this was a germane reason to reject Mr. Schock's opinion.

Second, the ALJ found Mr. Schock's opinion is inconsistent with the record as a whole. Tr. 24. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ noted Mr. Schock's opinion was inconsistent with the objective medical evidence, including the normal gastrointestinal workup, records indicating Plaintiff's condition was stable on medication, and generally normal strength on examination. Tr. 24. The ALJ also found Mr. Schock's opinion was inconsistent with Plaintiff's continued work with horses. *Id.* The ALJ also noted there was no evidence in the record that supported Mr. Schock's opinion that Plaintiff needs to lie down during the day. *Id.*

Plaintiff argues the ALJ did not explain specific inconsistencies between the evidence and Mr. Schock's opinion. ECF No. 14 at 12. As discussed *supra,* Mr. Schock's disabling opinion is not consistent with the treatment records, which demonstrate significant improvement with treatment. Mr. Schock's opinions is also not consistent with Plaintiff's ability to engage in a variety of physically demanding tasks and work related to horses over the years, as discussed *supra.* This was another germane reason to reject Mr. Schock's opinion. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

1    The District Court Executive is directed to file this Order, provide copies to

2  counsel, and **CLOSE THE FILE.**

3        DATED June 22, 2021.

4                    *s/Mary K. Dimke*
                    MARY K. DIMKE
5              UNITED STATES MAGISTRATE JUDGE

ORDER - 22